UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>V.<br><br>**BRANDANE SMITH** | **DOCKET NO. 3:23-cr-267-KDB-3**<br><br>**GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO THE DRAFT PSR** |

## INTRODUCTION

Brandane Smith entered a knowing and voluntary plea of guilty. No agreements, promises, or assurances were made beyond what is in the written plea agreement. The written agreement included joint recommendations regarding some portions of the sentencing guidelines. The written agreement did not include any agreements to limit or prevent the application of any other aspects of the sentencing guidelines. The written agreement did not include an agreed upon Adjusted Offense Level. The written agreement did not include any promises or assurances as to prosecutions outside the Western District of North Carolina.

## PROCEDURAL BACKGROUND

Brandane Smith was charged in the above captioned matter with a single conspiracy count. Superseding Indict., Doc. 38. Smith pled guilty pursuant to a negotiated plea agreement, Doc. 104, on June 23, 2025. At the time Smith pled guilty, he had criminal prosecutions pending in South Carolina for a robbery committed in Mt. Pleasant, South Carolina, and for possession of a firearm by a felon committed in Mt. Juliet, Tennessee.

The Draft Presentence Investigation Report was prepared and file September 10, 2025. Draft PSR, Doc. 118. Smith makes several objections to the Draft PSR objecting to (a) several aspects of the relevant conduct, (b) the application of a +6 enhancement for "otherwise using a firearm" instead of a negotiated +5 enhancement for "brandishing a firearm under U.S.S.G.§ 2B3.1(b)(2), (c) an +2 enhancement for physically restraining another to facilitate the commission of the offense. under U.S.S.G.§ 2B3.1(b)(4)(B), and (d) the application of multi-count U.S.S.G.§ 3D1.4 or any guideline calculation to an offense level greater than 31. Obj. to PSR, Doc. 124.

## ARGUMENT

**I. Smith's relevant conduct set forth in the PSR is provable by a preponderance of the evidence.**

The conduct recited in the PSR fits squarely within the definition of relevant conduct provided in U.S.S.G.§ 1B1.3, was appropriately considered by probation in the preparation of the PSR, and should be considered by the Court at sentencing. Smith is correct the relevant conduct also constitutes additional offenses for which he could be prosecuted. As a result, U.S.S.G §§ 5G1.1-5G1.3 may apply at sentencing in this matter.

The undersigned AUSA informed Smith, through counsel, that no efforts would be made by the Government to seek resolutions favorable to Smith in prosecutions outside the Western District of North Carolina. Smith now informs the Court that he entered into his plea agreement with an understanding that his plea would "resolve any and all potential charges related to the conspiracy." PSR Obj., Doc. 124, at 2. There is no such provision in the written plea agreement, Doc. 104, nor did the government make any representation to that effect to Smith at any point. Smith did request the inclusion of such terms in his plea agreement, and those terms were rejected by the Government.

## II. The brandishing of firearms during the execution of the agreed upon robberies was reasonably foreseeable conduct and a +5 enhancement under U.S.S.G.§ 2b3.1(b)(2)(C) is appropriate.

Smith conspired and planned multiple jewelry store robberies to be committed with the use of firearms and sledgehammers. In order to effectuate these robberies, the firearms would necessarily need to be brandished. The Government believes an enhancement for brandishing is appropriate. The Government acknowledges that firearms were otherwise used by members of the conspiracy, but submits that the use of firearms beyond mere brandishing was less foreseeable to Smith, who neither brandished nor otherwise used firearms himself during the completed robberies. The Government concedes that neither probation nor the Court is bound by the Government's position.

## III. While the facts recited in the PSR are accurate, the physical restraint of victims was not necessarily foreseeable to Smith.

Several completed robberies occurred during the course of the conspiracy. In some of the robberies, but not all, victims were restrained to facilitate the commission of the robbery. Since some of the robberies were successfully completed without restraining any victims, and the Government submits that physical restraint may not have been foreseeable to Smith who did not himself restrain anyone during the robberies. The Government concedes that neither probation nor the Court is bound by the Government's position.

## IV. The negotiated plea agreement does not limit Court's ability to apply the Sentencing Guidelines and preserves the Government's ability to seek additional offense characteristics and enhancements.

The parties did not enter into a negotiated agreement to jointly recommend that Smith's offense level be set at 31. The express, written terms of the agreement make clear that "the parties agree that either party may argue their respective

positions regarding any other specific offense characteristics […]". Plea agreement, Doc. 104, at ¶ 8.e.

Smith seems to state that the government joins him in his assertion that the parties negotiated a total offense level for his guideline calculation. It does not. The Government does agree that it did not contemplate the implications of U.S.S.G.§ 3D1.4 on Smith's guideline calculations at the time the terms of the agreement were negotiated. Further, the government believes Smith's assertions that he similarly overlooked the application of chapter 3D1.

The Government also agrees that Smith's stated goal in the negotiations was to minimize his ultimate sentencing guideline range and likely period of incarceration. However, Smith specifically sought a negotiated plea agreement that would limit or cap his offense level calculation. The Government refused this request and maintained both Government's right to seek additional enhancements or prove specific offense characteristics. The request and refusal are documented in a March 19, 2025 email between the prosecutor and defense counsel.

There is also nothing in the agreement that would prevent probation or the Court from application of any aspect of the guidelines that were deemed appropriate. Smith was fully aware that probation and the Court could identify and apply sentencing enhancements beyond those explicitly agreed upon in the agreement.

Respectfully,

RUSS FERGUSON
UNITED STATES ATTORNEY

*/s/ Timothy Sielaff*
ASSISTANT UNITED STATES ATTORNEY
North Carolina State Bar No. 33648

**CERTIFICATION**

Pursuant to the Standing Order of this Court entered June 18, 2024, and published to the Bar of the Western District on June 27, 2024, the undersigned hereby certifies:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

*/s/ Timothy Sielaff*
ASSISTANT UNITED STATES ATTORNEY